UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
FILED
NOV 30 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-55-GWU

DANNY ALLEN,            PLAINTIFF,

VS.      **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,            DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

|   |   |
|---|---|
|   | Step 4. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921. |
| 4. | Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d). |
| 5. | Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a). |
| 6. | Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e). |
| 7. | Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1). |

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

Allen

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Allen

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

Allen

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Danny Allen, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of back pain and alcohol dependence. (Tr. 25). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Allen, absent the effects of his alcoholism, retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 25-6). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if he were capable of medium level exertion, and could also not do work requiring greater than fifth grade reading ability and third grade mathematics ability. (Tr. 333). The VE responded that there were jobs that such a person could perform, and proceeded

7

Allen

to give the numbers in which they existed in the state and national economies. (Tr. 333-4).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence. A significant issue in this case are the provisions of 42 U.S.C. Sections 423(d)(2)(C) and 1382(c) (a)(3) (J), which provide that an individual cannot be considered disabled under the Social Security Act if alcoholism or drug addiction would be a contributing factor material to the disability determination. In addition, the plaintiff's Date Last Insured (DLI) for DIB purposes was December 31, 2003, meaning that he had to prove disability prior to this date in order to be entitled to DIB. His SSI application is not affected by the DLI, but rather the proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date. Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1233 (6th Cir. 1993).

For the reasons set out below, the Court concludes that the ALJ correctly determined that drug and alcohol addiction were material to the disability determination, and that the plaintiff did not otherwise establish disability.

Although Mr. Allen alleged inability to work beginning in October, 1998 due to limitations on his ability to stand, sit, or walk for long periods of time (Tr. 72), medical records from Mountain Comprehensive Care (MCC) show that he was referred to the facility in January, 1998 by his employer, and was in danger of losing

Allen

his job due to alcohol abuse. (Tr. 138). At the time, Mr. Allen stated that he had been drinking a pint of alcohol every night for the past year, had been going into work while drinking, and was suffering from blackouts and delirium tremens (DTs). (Id.). He had been treated in the early 1990s at the same outpatient mental health center after being referred by the West Virginia Parole Board due to three DUI convictions. (Tr. 127). The only diagnosis given at MCC was alcohol dependence.

The plaintiff also underwent three consultative psychological evaluations in connection with his application for benefits, two of which were performed by Dr. Eric Johnson.

At the initial evaluation by Dr. Johnson in September, 2002, Mr. Allen admitted to drinking a "few beers" on the weekends, but also complained of depression, suicidal thoughts, worrying, and difficulty in dealing with some co-workers and the public. (Tr. 157-8). At that time Dr. Johnson diagnosed moderate major depression, and "rule out" alcohol dependence, along with obsessive-compulsive traits. (Tr. 158). Dr. Johnson opined that the plaintiff would not be able to maintain concentration and persistence over a period of time and would have difficulty adapting to work pressures in a work environment, although this might change with treatment. (Tr. 159). He suggested psychological testing, including assessment of potential malingering. (Id.).

9

Allen

Two state agency psychologists who reviewed the record at this point concluded Mr. Allen did not have a "severe" impairment. (Tr. 160, 175).

After an Appeals Council remand, there were two more psychological evaluations in 2004.

Dr. Johnson examined Mr. Allen again in January, 2004, and on this occasion Dr. Johnson reviewed some previous records from the MCC. (Tr. 247). He noted that the records had indicated both blackouts and DTs, but Mr. Allen was now denying DTs. (Tr. 248). He admitted to a history of excessive alcohol use, but claimed he had not imbibed any in the past week. (Tr. 247). Dr. Johnson noted that Mr. Allen was wearing much aftershave, which suggested that he was drinking. (Tr. 249). Otherwise, the plaintiff complained of depression and suicidal thoughts. (Tr. 248). He also exhibited a great deal of pain behavior, and appeared depressed and agitated. (Tr. 249). IQ testing showed a full-scale score of 70, in the low borderline range, while achievement testing showed fifth grade reading and third grade arithmetic. (Tr. 250). Dr. Johnson's "diagnostic impression" was alcohol dependence, severe major depression, and borderline intellectual functioning. (Tr. 251). He felt the plaintiff was extremely limited in making occupational, performance, and personal-social adjustments, but part of the reason given by the psychologist was alcohol dependence which was "not in remission." (Tr. 252-3).

Allen

Finally, Dr. Stuart Cooke, another psychologist, examined the plaintiff in March, 2004, and reviewed Dr. Johnson's 2002 evaluation. (Tr. 254). Mr. Allen initially asserted that he did not know whether he was still drinking, but later admitted that he had consumed a pint the day before yesterday. (Tr. 255, 257). He also described obtaining "pain pills" illegally. Dr. Cooke noted that he was "reeking of cologne and breath mints" and was behaving as if he had had a few drinks before coming to the office. (Tr. 258-9). He complained of blindness in the left eye, and only part of the intelligence testing could be performed, which produced a verbal IQ score of 60. (Tr. 258).[1] Dr. Cooke commented that this seemed out of keeping for someone who had spent several years selling mobile homes. (Id.). His diagnosis was polysubstance abuse and malingering. (Id.).

The ALJ submitted the record to a medical expert (ME), Dr. Stuart Gitlow, a psychiatrist. (Tr. 264). Dr. Gitlow found that there was no significant period of documented sobriety at any time, and the additional psychological symptoms in recent years may have been the results of malingering or alcohol-induced difficulties. (Id.). He felt that Mr. Allen's mental problems were likely secondary to alcohol use and would be expected to improve rapidly upon attaining sobriety. (Tr. 265). Dr. Gill

---

[1] The ALJ noted that the consultative physical examiner had recorded 20/30 vision in both eyes without glasses in a 2002 examination, and declined to find that poor vision was a "severe" impairment. (Tr. 23,150). Although another physician indicated left eye blindness during a physical examination in 2004 (Tr. 277), the plaintiff has not raised the issue on appeal.

11

Allen

opined that there was no evidence of any limitations absent ongoing alcohol abuse and, in addition, recent evaluations showed significant evidence of malingering and of acute alcohol intoxication. (Id.).

Therefore, substantial evidence supports the ALJ's determination regarding alcohol abuse. The plaintiff does not challenge this finding on appeal, and limits his objections to the ALJ's treatment of medical records from a recent hospitalization for dizziness and chest pain.

The plaintiff points out that at the June 7, 2004 administrative hearing, he had informed the ALJ that he had been in the hospital three weeks earlier, and had an EEG and other tests. (Tr. 320-1). The ALJ requested that these hospitalization records be submitted. (Tr. 335). Subsequently, some records from a May 17, 2004 admission at the Williamson Appalachian Regional Hospital were submitted. (Tr. 276-311). As the plaintiff notes, the ALJ summarized these records as follows:

> The claimant was hospitalized from May 17 to May 19, 2004 with complaints of chest pain (Exhibit 16F). X ray of the chest was normal and CT of the head was normal. EKG showed a left atrial enlargement; however, at the time the claimant had a blood alcohol level of 178 (400-800 is fatal). His discharge was pleuritic chest pain. There is no evidence of heart disease. There is no evidence of any end organ damage.

(Tr. 20).

The plaintiff points out that this evidence was submitted after state agency physicians had reviewed the evidence and determined that the plaintiff was not

Allen

disabled. (E.g., Tr. 201). The plaintiff objects that the ALJ was serving as his own medical expert in evaluating the significance of the records. However, as stated in the Applicable Law section of this opinion, it is the plaintiff's responsibility to prove his own case. The records submitted showed that the plaintiff was given diagnoses of syncope and pleuritic chest pain, but no functional restrictions are suggested. A mere diagnosis of a condition does not establish its severity. See Foster v. Halter, 853 F.2d 483, 489 (6th Cir. 1988). The only physical examiner to express an opinion, Dr. Roy Stauffer, concluded that the plaintiff could perform medium level exertion and would have no other limitations. (Tr. 151-2). The ALJ followed these restrictions, and added the plaintiff's actual reading and arithmetic abilities from Dr. Johnson's testing. No greater restrictions have been proven and, consequently, the administrative decision is supported by substantial evidence.

The decision will be affirmed.

This the ___30___ day of November, 2005.

G. WIX UNTHANK
SENIOR JUDGE

13